FILED

2023 Jul-28  PM 12:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **GERALD PAULK, et al.,**<br>    Plaintiffs, | |
| **v.** | **Case No. 5:22-cv-15-CLM** |
| **TENNESSEE VALLEY AUTH.,**<br>    Defendant. | |
| | |
| **JOSEPH MILES,**<br>    Plaintiff, | |
| **v.** | **Case No. 5:22-cv-105-CLM** |
| **TENNESSEE VALLEY AUTH.,**<br>    Defendant. | |
| | |
| **TOMMY JONES, et al.,**<br>    Plaintiffs, | |
| **v.** | **Case No. 5:22-cv-114-CLM** |
| **TENNESSEE VALLEY AUTH.,**<br>    Defendant. | |

## MEMORANDUM OPINION

The Tennessee Valley Authority ("TVA") moves to dismiss the operative complaints in three cases: (1) *Paulk, et al. v. TVA*, Case No. 5:22-cv-15-CLM; (2) *Miles v. TVA*, Case No. 5:22-cv-105-CLM; and (3) *Jones, et al. v. TVA*, Case No. 5:22-cv-114-CLM. The three cases are related, but not consolidated. Because the motions and the briefs are identical (except for citations to the ECF dockets), the court resolves the motions together in one opinion.

The parties have also filed the following: (1) Plaintiffs' Motion to Consolidate Cases; (2) TVA's Motion to Stay All Discovery and Related Proceedings; and (3) Plaintiffs' Motion for a Case Management Order. Since challenges to the legal sufficiency of a claim "should . . . be resolved before discovery begins," *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366–69 (11th Cir. 1997), this court will resolve TVA's motion to dismiss before ruling on the other pending motions. Throughout this opinion, the court's citations refer to the ECF docket in *Paulk, et al. v. TVA*, Case No. 5:22-cv-15-CLM.

## I.    BACKGROUND

These actions arise out of a fire that occurred on Dock B of the Jackson County Park and Marina.

### A.    The Dock B Fire

At about 12:35am on January 27, 2020, a fire broke out aboard the *Dixie Delight*, a 43-foot liveaboard houseboat owned by Tim Parker. The *Dixie Delight* was berthed in Dock B, slip 36 at the Jackson County Park and Marina. The fire engulfed the *Dixie Delight*, and then spread to neighboring vessels and to Dock B. Dock B was a wood-framed covered dock with a metal roof, consisting of two uncovered and 36 covered slips. The *Dixie Delight* was docked in the slip closest to the shore, so when the fire spread to the dock, it locked occupants further from the shore from using the dock to make it to shore. The fire resulted in deaths, personal injuries, and property losses.

The *Dixie Delight* was connected to shore power at the time of the fire. The fire originated in the bulkhead (inner walls within the hull of the ship) between the electrical panel of the *Dixie Delight* and its storage closet. Each of the 36 slips on Dock B had a breaker box and a meter box to deliver and meter electricity. Jackson County performed maintenance work on the slip 36 breaker box less than two weeks before the fire.

Plaintiffs include (1) owners of vessels which were regularly moored and berthed in leased slips at Dock B, (2) overnight guests of such boat-owner lessees, and (3) the legal representatives of such guests. Plaintiffs seek to recover monetary damages for deaths, personal injuries, and property losses that resulted from the fire.

TVA is the defendant. TVA is a corporate agency and instrumentality of the United States, created by the TVA Act of 1933, *as amended*, 16 U.S.C. §§ 831-831ee ("TVA Act"). The TVA is statutorily charged with, among other things, "'[t]he unified development and regulation of the Tennessee River system,' including the Guntersville Reservoir, as agent for the United States." *TVA v. Walcott*, 611 F. Supp. 3d 1328, 1333 (N.D. Ala. Feb. 27, 2020) (citing 16 U.S.C. § 831y-1).

Jackson County was the designer, builder, owner, operator, maintainer of Dock B, and lessor of the Dock B boat slips. Accordingly, Jackson County owed various legal duties to the lessees of Dock B slips and their guests (*i.e.*, Plaintiffs). Plaintiffs have filed actions against Jackson County and others in state court. The TVA is not a party to those state court actions.

Dock B was built on land under an easement granted by the United States in a 1963 Indenture, and construction was authorized by a 1999 permit issued by TVA under Section 26a of the TVA Act.

Plaintiffs allege that TVA is legally responsible to them because TVA was the owner of the dock (which TVA disputes) and/or the underlying real property, and therefore owed a tort duty to Plaintiffs. Alternatively, Plaintiffs allege that TVA is liable because TVA made inspections of Dock B, and voluntarily assumed a tort duty to Plaintiffs which it did not otherwise have.

## B.    Pertinent Property Rights

Guntersville Reservoir is a large impound on the Tennessee River in northeast Alabama. In connection with the impoundment, TVA acquired through purchase and condemnation certain real property outside the original river channel, as well as shoreline property. All property acquisitions were in the name of the United States.

In 1963, TVA deeded real property from the United States to Jackson County via an Indenture. (*See* Doc. 27-1; *see also* Doc. 13-12). Jackson County became the owner in fee of a 77-acre tract. The park portion of Jackson County Park and Marina is located almost entirely on that 77-acre tract.

The Indenture also conveyed an easement to Jackson County for ingress and egress across a defined easement area, and the right to construct and maintain piers, docks, and similar water-use facilities on the easement area and in the waters on which the easement area immediately abuts.

The entire conveyance was subject to the conditions that all property and property rights transferred would be (1) used solely for public recreational purposes, (2) open to all members of the public without distinction or discrimination, and (3) "operated and developed in accordance with generally accepted standards" for public recreational purposes. Upon breach of any of these conditions, the United States retained the right to reenter and take possession of any or all property and rights conveyed—as if the conveyance had never been made. The Indenture also reserved to the United States a right to enter the fee and easement area to carry out any functions, activities, or programs provided for by the TVA Act. It also reserved the right for the United States to enter the fee and easement area, and all buildings, structures, improvements, and facilities located on any part of the land to inspect the land, buildings, structures, improvements, and facilities and the operations of the grantee. TVA does not dispute that its representatives entered Jackson County's property several times over the years for inspecting.

The Indenture specified that the easement right of Jackson County to construct and maintain piers, docks, and similar water-use facilities was expressly subject to a condition that any exercise of the right would be "solely at locations and in accordance with plans approved in advance and in writing by TVA." It also specified that the Indenture in no way constituted any approval to construct any structure or facility within the scope of Section 26a of the TVA Act, and that no such structure "shall be constructed" without 26a approval.

The Indenture also specified that TVA was liable for personal injuries, property damage, or loss of life or property caused by TVA's sole negligence.

4

**C.     TVA's 26a Approvals of Dock B**

Dock B was built in or around 1999. The construction project had to be approved by the TVA through the "Section 26a permitting process."

Section 26a of the TVA Act, as amended, provides that:

> no dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations shall be constructed, and thereafter operated or maintained across, along, or in [the Tennessee River] or any of its tributaries until plans for such construction, operation, or maintenance shall have been submitted to and approved by the [TVA] Board; and the construction, commencement of construction, operation, or maintenance of such structures without such approval is prohibited.

16 U.S.C. § 831y-1. TVA's implementing regulations at 18 C.F.R. § 1304.204 provide a process for persons seeking approval for the construction of structures covered by Section 26a. The regulations specifically apply to boat docks. *See* 18 C.F.R. §1304.204.

The regulations provide that any "power lines, poles, electrical panels, and wiring" must be installed "[i]n a way that would not be hazardous to the public" and "[i]n compliance with all State and local electrical codes . . ." 18 C.F.R. § 1304.301(a). The regulations also state that "TVA's issuance of a [26a] permit does not mean that TVA has determined the facilities are safe for any purpose or that TVA has any duty to make such a determination." *Id.* at § 1304.301(c). The regulations also provide that if any approved structure "is not kept in a good state of repair and in good, safe, and substantial condition" and the structure owner fails to remedy the situation after notice from TVA, then TVA may cancel the permit. 18 C.F.R. § 1304.406.

In response to applications from Jackson County, TVA first permitted Dock B in 1999, and then re-permitted it with superseding 26a permits in 2010 and 2017. Sketches of Dock B were attached to the 1999 and 2010 26a permits. (Doc. 13-15, p. 20; Doc. 13-16, p. 39). Those sketches contain only the

5

basic structural layout of Dock B, and show nothing related to structural details, electrical service, portable water, sewage, fire extinguishers, life rings, or other things that might be located on Dock B.

All 26a permits for Dock B contained these caveats with respect to the scope of TVA's approval:

> This approval shall not be construed to be a substitute for the requirements of any federal, state, or local statute, regulation, ordinance, or code, including but not limited to, applicable building codes, now in effect or hereafter enacted.
>
> * * *
>
> [Approval] merely constitutes a finding that the facility, if constructed at the location specified in the plans submitted and in accordance with said plans, would not at this time constitute an obstruction unduly affecting navigation, flood control, or public lands or reservations.

(Doc 13-15, p. 16, 18; Doc. 13-16, p. 16, 18; Doc. 13-16, p. 59, 61).

The permits also contained the following provision:

> In issuing this Approval of Plans, TVA assumes no liability and undertakes no obligation or duty (in tort, contract, strict liability or otherwise) to the applicant or to any third party for any damages to property (real or personal) or personal injuries (including death) arising out of or in any way connected with applicant's construction, operation, or maintenance of the facility which is the subject of this Approval of Plans.

(Doc. 13-15, p. 16, Doc. 13-16, pp. 16, 59).

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The court is also not required to "'accept as true allegations that contradict matters properly subject to judicial notice.'" *Carol Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1272 (M.D. Ala. 2019) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)), *aff'd*, 6 F.4th 1247 (11th Cir. 2021).

## III.   DISCUSSION

The First Amended Complaint contains five counts: (1) Negligence; (2) Wantonness; (3) General Maritime Law Negligence Personal Injury Survival Action; (4) Negligence Resulting in Personal Injury and Wrongful Death Under General Maritime Law; and (5) Negligence Resulting in Property Damage Under General Maritime Law. (*See* Doc. 26).

TVA asks this court to dismiss Plaintiffs' complaints for four reasons: (1) TVA did not own Dock B; (2) Plaintiffs are bound by a release in the 1963 Indenture which releases TVA from tort actions resulting from the exercise of TVA's inspection and enforcement rights; (3) TVA had no superiority of knowledge, relative to Jackson County, and (4) Plaintiffs' generalized allegations cannot establish Good Samaritan liability. (*See* Doc. 28, p. 8). The court addresses each argument in turn.

7

## A.     Dock B Ownership

TVA first argues that Plaintiffs cannot hold TVA liable under the theory that TVA owned Dock B and thus owed some duty to Plaintiffs. (Doc. 28, pp. 18–20). Plaintiffs respond that their allegations hinge not on TVA's ownership of the dock but on the fact that "TVA controlled virtually every aspect of the docks." (Doc. 32, p. 19).

The court agrees with Plaintiffs that it needn't resolve whether TVA owns Dock B or the submerged land underneath it at the motion-to-dismiss stage. The operative complaint alleges that:

> 35. At all pertinent times, it is believed Dock B was **owned, managed**, **and/or controlled** by Defendant, the Tennessee Valley Authority.

(Doc. 26, p. 10) (emphasis added). And other allegations in the complaint support Plaintiffs' assertion that TVA's control over Dock B gave rise to a legal duty. For example, paragraph 38 of the operative complaint alleges that TVA had safety agreements with Park operators, such as Jackson County, and that TVA would achieve these safety goals by inspecting the Park every year. (*Id.*, p. 11). According to Plaintiffs, TVA performed these annual inspections to assess whether Jackson County was meeting industry safety standards. (*Id.*, pp. 11–12). Plaintiffs say that because TVA voluntarily agreed to inspect Dock B, monitor the dock for hazards, and correct any potential flaws, TVA assumed a duty to perform these inspections in a competent manner. (*Id.*, pp. 13–14). Plus, Plaintiffs assert that TVA undertook the Marina's duty to provide Plaintiffs a safe premises and warn them of hazards by causing the Marina to rely on findings from TVA inspections to reduce safety risks. (*Id.*, pp. 15–16).

Pleading control is enough because the duty to prevent damages from a property's unsafe conditions springs from "possession" or "control" over the property. *See Tisdale v. United States*, 62 F.3d 1367, 1372 (11th Cir. 1995). Other courts have determined that "[c]ontrol over the easement and not ownership of the property determines who is liable for injuries resulting from a failure to maintain and repair the easement." *Kesslering v. Chesapeake & O. Ry. Co.*, 437 F. Supp. 267, 269 (E.D. Mich. 1977) (quotations omitted).

8

Based on the factual allegations discussed above, the court finds that Plaintiffs have adequately alleged that TVA exercised enough control over Dock B to be held liable for Plaintiffs' injuries.

The court recognizes that some of the factual allegations in Plaintiffs' complaint conflict with the theory that TVA owed Plaintiffs a duty because it managed or controlled Dock B. But plaintiffs are allowed to plead in the alternative in federal court. *See* Fed. R. Civ. P. 8(d)(2). And though discovery may show that TVA neither owns nor controls Dock B, Plaintiffs have alleged enough facts that support a finding of control to survive TVA's motion to dismiss. So the court will not dismiss the complaint on the ground that TVA did not own Dock B.

## B.    1963 Indenture

TVA's next argument is that the actions are precluded by an exculpatory release. (Doc. 28, pp. 20–24). The 1963 Indenture that conveyed property rights to Jackson County contained the following clause:

> 6. As part of the consideration for this indenture, Grantee releases Grantor, [and] its . . . agents . . . of and from, and agrees that they shall not incur, any liability for injury to or death to any person or persons or for any damage to or loss of property . . . as a result of the exercise or enforcement of any of the other rights or interests reserved, excepted or otherwise retained under this indenture, except liability for personal injuries, property damage, or loss of life or property caused by the sole negligence of the Grantor.

(Doc. 13-12, p. 8).

TVA argues that Plaintiffs are bound by this release, and recovery is precluded by that provision. TVA says that under the plain language of the release clause, Jackson County as grantee released TVA from liability for tort damages resulting from TVA's exercise of its inspection and enforcement activities on the fee and easement area except for damages caused by the sole negligence of TVA. And here, there is no allegation that Plaintiffs' claimed

damages were caused by the sole negligence of TVA. TVA points out that in their state court actions, Plaintiffs specifically claim that their damages were caused by the negligence of Jackson County and other entities. And logic dictates that if TVA could be construed as negligent for failing to identify and warn of the various alleged deficiencies in Jackson County's construction and operation of Dock B, then Jackson County would be just as negligent, and those deficiencies would not exist because of the sole negligence of TVA.

The court rejects this argument for two reasons.

### 1. Indenture Provision is Indemnification Agreement

First, at least as to Plaintiffs' claims, the court construes Indenture Section 6 as an indemnification agreement and not a release. TVA agrees that the part of Section 6 that says Jackson County "agrees that [TVA] shall not incur, any liability for injury to or death to any person or persons or for any damages to or loss of property" is an indemnification agreement. (Doc. 51, pp. 5–6). But TVA says that Section 6 also includes a release because it also says Jackson County "***releases*** [TVA] . . . of and from . . . any liability for injury to or death to any person or persons or for any damages to or loss of property." (Doc. 13-12, p. 8) (emphasis added).

It would be redundant for Jackson County to agree to indemnify TVA if Section 6 released TVA from liability to any person for injury, death, or property damage. And as Plaintiffs point out, Section 6 says only that the Grantee (*i.e.*, Jackson County) releases TVA from liability. So while the release language in Section 6 binds Jackson County, it, by its plain language, doesn't bind the boat-owners and their guests who are plaintiffs here. As a result, the most commonsense interpretation of Section 6 is that in consideration for the real property deeded to Jackson County in 1963 Jackson County agreed to: (a) indemnify TVA from liability for a third-party's personal injuries and property damage not caused by TVA's sole negligence, and (b) release TVA from liability to Jackson County for those injuries. Jackson County did not (in 1963) release any claims that citizen Plaintiffs may have against TVA for actions that happened in 2020.

TVA's counterargument to this interpretation of Section 6 is that Plaintiffs' entry onto Dock B was under the County's title, so Plaintiffs' rights against TVA cannot be greater than Jackson's County's rights against TVA.

(Doc. 28, pp. 22–24). In support of this argument, TVA cites two cases from the Alabama Supreme Court. First, TVA cites *Republic Steel Corp. v. Payne*, 132 So. 2d 581 (Ala. 1961), in which the court held that a release in a conveyance bound lessees of the real property owner. That conveyance released Republic from liability "to the Purchasers or Purchasers' heirs, assigns or successors in interest for damages on account of any injuries or damages to land . . . or to any owners, occupants or other persons in or upon said land." *Id.* at 583. The Purchasers further agreed to "for themselves and for those who may hold title to any of said real estate under or through them covenant not to sue for any of said injuries or damages." *Id.* Based on this release language, the court held that the Purchasers and their lessees could not sue Republic for future damages resulting from fumes and gases from Republic's mining operations. *Id.*

Unlike the release in *Republic Steel Corp.*, which applied to anyone who held title to any of the real estate under or through the Purchasers, Section 6 binds only Jackson County "its successors and assigns." (Doc. 13-12, p. 9). And TVA's counsel agreed at the hearing on the motion to dismiss that Plaintiffs aren't Jackson County, its successors, and assigns. (Doc. 49, p. 18). Plus, though the complaint characterizes the boat-owners as Marina tenants, nothing in the Indenture suggests that its terms would apply to those who docked their boats at Dock B. So the court finds that *Republic Steel Corp.* doesn't establish that Section 6 released TVA from liability for claims brought by the boat-owner Plaintiffs.

The second case TVA cites is *Uhlig v. Moore*, 93 So. 2d 490 (Ala. 1957). In that case, the guest of a renter at a rooming house sued both the lessee and owner of the house after falling from an allegedly unsafe flight of stairs. *Id.* at 492. The court affirmed the dismissal of the claims against the owner because the defect in the stairs was patent and not latent. *Id.* at 493. In reaching this determination, the court reasoned that "the guests of a tenant or subtenant are not members of the general public, but enter the premises under the tenant's or subtenant's title, and can have no better right than that of the tenants." *Id.* at 492. And because landlords are liable to tenants for only latent defects known to the landlord and concealed from the tenant, the court held that landlords aren't liable for patent defects that injure a tenant's guest. *See id.* at 492–93.

11

*Uhlig* doesn't persuade the court that Section 6 released TVA from liability for Plaintiffs' claims. First, *Uhlig* doesn't concern the interpretation of the scope of a release in a conveyance, so it has little applicability to this case. Second, the court has found that Section 6 doesn't release TVA from liability for the boat-owner Plaintiffs, so it is consistent with *Uhlig* to say that Section 6 also doesn't bind the boat-owners' guests.

In short, the court finds that, at most, Section 6 indemnifies TVA from liability for Plaintiffs' claims. It doesn't bar Plaintiffs from bringing their claims against TVA altogether.

### 2. *Release Doesn't Apply if Damage is Caused by TVA's Sole Negligence*

Even if Section 6 were an exculpatory release that covered Plaintiffs' claims, it wouldn't warrant dismissal of the complaint. Both parties agree that Section 6 doesn't apply to "personal injuries, property damage, or loss of life or property caused by the sole negligence of [TVA]." (Doc. 13-12, p. 8). And having reviewed Plaintiffs' complaint, the court finds that a reasonable interpretation of Plaintiffs' allegations is that TVA's sole negligence led to the Dock B fire.

To be sure, Plaintiffs have sued Jackson County over the Dock B fire in state court. And some of Plaintiffs' allegations conflict with the theory that TVA's negligence was the sole cause of Plaintiffs' injuries. For example, paragraph 41 of the operative complaint alleges that "[b]y voluntarily undertaking the duty to perform these inspections and failing to adequately report its findings, TVA is liable for its own conduct. Additionally, and/or alternatively, TVA is vicariously liable **for the failings of Jackson County**." (Doc. 26, p. 14) (emphasis added). But again, plaintiffs are allowed to plead in the alternative. *See* Fed. R. Civ. P. 8(d)(2). And at this motion-to-dismiss stage, the court must give Plaintiffs the benefit of the doubt. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). So the court finds that Plaintiffs have plausibly alleged that TVA's sole negligence led to their injuries.

———

For both these reasons, the court determines that Section 6 of the 1963 Indenture doesn't bar Plaintiffs from bringing their claims.

## C.    Superior Knowledge

Next, TVA argues that as agent for the owner of the premises underlying Dock B, TVA violated no duty owed to Plaintiffs because, relative to Jackson County, there was no superiority of knowledge regarding the alleged deficiencies in the construction and operation of Dock B. TVA is referring to the "superior knowledge" doctrine.

The Alabama Supreme Court has explained:

> Where a premises owner can reasonably expect that its contractor knows as much or more than the premises owner does regarding a dangerous condition—whether this is so because the danger is open and obvious to anyone, because the owner has told the contractor all it knows, or because of the contractor's expertise and previous experience on the premises—the superiority-of-knowledge test is not met and the premises owner has no further duty to warn the contractor. By extension, in that circumstance, the premises owner has no additional, direct duty to warn the contractor's employees or any subcontractors.

*S. Ala. Brick Co., Inc. v. Carwie*, 214 So. 3d 1168, 1178 (Ala. 2016).

TVA argues that the "superior knowledge" principle applies "*a fortiori*" here because the government did not *own* Dock B itself (it owned only the underlying land). Plaintiffs argue in response that whether TVA had superior knowledge can be determined only after discovery.

The court finds that this factual inquiry is better resolved after discovery.

## D.    Good Samaritan Liability

The complaints assert that TVA (1) voluntarily undertook a duty to inspect Dock B for the benefit and safety of lessees and guests using the dock, and (2) breached that duty to enable Plaintiffs to recover. (*See* Doc. 26, pp.

13–14). This legal principle is often called the "assumed duty" or "Good Samaritan" doctrine.

TVA's final argument for dismissal is that Plaintiffs' factual allegations cannot establish that TVA can be held liable under the Good Samaritan Doctrine. (*See* Doc. 28, pp. 26–35). Plaintiffs argue in response that the amended complaints easily plead facts stating a plausible claim for relief, and that regardless, no ruling should be made on this theory until discovery has been completed. (*See* Doc. 32, pp. 26–37).

Both Alabama and maritime law apply the Restatement (Second) of Torts Section 324A in deciding Good Samaritan cases. *See Yanmar Am. Corp. v. Nichols*, 166 So. 3d 70, 84 (Ala. 2014) ("liability for the breach of a duty voluntarily undertaken is governed by Restatement (Second) of Torts § 324A"); *Miss Janel, Inc. v. Elevating Boats, Inc.*, 725 F. Supp. 1553, 1567 (S.D. Ala. 1989) ("The 'good samaritan' rule is applicable in maritime cases, and is set forth in section 324A of the Second Restatement of Torts").

The Restatement (Second) of Torts § 324(A) provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Plaintiffs allege that TVA assumed a periodic inspection undertaking with respect to Dock B. Courts often assume the initial 324A elements

arguendo (*i.e.*, undertaking and failure to exercise reasonable care in the undertaking), and proceed to analyze whether the alleged facts establish any one of 234A's three other alternative requirements. *See Howell v. United States*, 932 F.2d 915, 918 (11th Cir. 1991) ("For purposes of discussion we assume the existence of all elements of 'good samaritan' liability except the last three alternative requirements and focus our attention on these"). TVA suggests that the court should assume that the initial elements of 324A are satisfied and proceed directly to an analysis of whether Plaintiffs have alleged facts sufficient to establish one of 324A's three other alternative requirements (increase in risk, undertaking duty owed by another, or reliance). (*See* Doc. 28, p. 28). The court will follow TVA's suggestion.

### 1. Alternative (a)

Alternative (a) "applies only to the extent that the alleged negligence of the defendant exposes the injured person to a greater risk of harm than existed previously." *Yanmar Am. Corp. v. Nichols*, 166 So. 3d 70, 84 (Ala. 2014) (internal quotation marks omitted). "Moreover, the test is not whether the risk was increased over what it would have been if the defendant had not been negligent. Rather, a duty is imposed only if the risk is increased over what it would have been if the defendant had not engaged in the undertaking at all." *Id.* (internal quotation marks and citations omitted). TVA argues that this alternative is not satisfied here because TVA's alleged insufficient performance did not increase the level of risk that already existed on Dock B.

### 2. Alternative (b)

"The Eleventh Circuit has stated that for liability to exist under [Section 324A(b)] the duty in question must be completely assumed." *Smallwood v. United States*, 988 F. Supp. 1479, 1482 (S.D. Ga. 1997); *see also Howell*, 932 F.2d at 919 (finding 324A(b) inapplicable because "[t]he duties of the FAA supplement rather than supplant the duties of the airline . . ."). TVA argues that alternative (b) does not apply here because there is no allegation that TVA's alleged undertaking to periodically inspect Dock B was an undertaking that supplanted (rather than merely supplemented) inspection duties owed by Jackson County.

15

### 3.  *Alternative (c)*

Alternative (c) can only apply if harm was suffered because of reliance by Jackson County or a Plaintiff upon the undertaking. Plaintiffs allege that after a TVA inspection, Jackson County "would then take steps to correct safety issues which were identified by the TVA" (doc. 26, p. 47). But TVA asserts that this alleged reliance is not the type of reliance required by alternative (c). Instead, according to TVA, invoking alternative (c) based on Jackson County's reliance requires an allegation and showing that because of TVA's activities, Jackson County neglected or reduced its own safety program to the detriment of Plaintiffs. *See Tillman v. Travelers Indem. Co.*, 506 F.2d 917, 921 (5th Cir. 1975) ("Although it was clearly shown that [the premises owner] consulted with Travelers' safety representative and complied with his recommendations for safety improvements, there is no indication . . . that because of Travelers' surveys [the premises owner] neglected or reduced its own safety program. Thus, . . . there was no evidence of the type of reliance required by § 324A").

Plaintiffs also allege reliance based on the theory that it was "known by the public, including Plaintiffs," that TVA "inspected recreational facilities' on TVA indentured land and that 'in reliance thereupon Plaintiffs utilized Dock B." (Doc. 26, p. 47). But in *Howell*, the Eleventh Circuit held that before 324A reliance can attach, plaintiffs "must at least show knowledge of the specific fact of inspection." 932 F.2d at 919.

—

Plaintiffs argue generally that the court should allow discovery on this issue. Plaintiffs explain that "'[t]he existence of a voluntarily assumed duty through affirmative conduct is a matter for determination in light of all the facts and circumstances.'" *Chandler v. Hosp. Auth. of Huntsville*, 548 So. 2d 1384, 1387 (Ala. 1989) (quoting *Parker v. Thyssen Mining Constr., Inc.*, 428 So. 2d 615 (Ala. 1983)).

The court agrees with Plaintiffs that discovery is needed. Plaintiffs have alleged enough facts to survive a motion to dismiss.

## IV.   CONCLUSION

For the reasons explained above, the court will **DENY** TVA's motions to dismiss. (Doc. 27 in *Paulk*; Doc. 24 in *Miles*; Doc. 28 in *Jones*).

The court will **GRANT** the motion to consolidate (1) *Paulk, et al. v. TVA*, Case No. 5:22-cv-15-CLM; (2) *Miles v. TVA*, Case No. 5:22-cv-105-CLM; and (3) *Jones, et al. v. TVA*, Case No. 5:22-cv-114-CLM throughout discovery. (Doc. 34 in *Paulk*; Doc. 31 in *Miles*; Doc. 38 in *Jones*).

The court will **DENY** the motion to stay all discovery. (Doc. 35 in *Paulk*; Doc. 32 in *Miles*; Doc. 35 in *Jones*).

The court will **ORDER** the parties to file a Rule 26(f) Report on or before **August 25, 2023**. The court will rule on the pending motions for a case management order after reviewing the Rule 26(f) Report.

The court will enter separate orders that carry out this opinion.

**Done** on July 28, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE